AO 91 (Rev. 11/82)

# CRIMINAL COMPLAINT

| UNITED STATES DISTRICT COURT | CENTRAL DISTRICT OF CALIFORNIA |
|---|---|
| UNITED STATES OF AMERICA<br>v.<br>DANIEL VILLALOBOS | DOCKET NO.<br><br>FILED FEB 19 2014<br>CENTRAL DISTRICT OF CALIFORNIA<br>BY ____ DEPUTY<br><br>MAGISTRATE'S CASE NO.<br>M 14 00393 |

Complaint for violation of Title 21, United States Code, Section 841(a)(1)

| NAME OF MAGISTRATE JUDGE<br>HONORABLE PAUL L. ABRAMS | UNITED STATES MAGISTRATE JUDGE | LOCATION<br>Los Angeles, California |
|---|---|---|
| DATE OF OFFENSE<br>March 27, 2013 | PLACE OF OFFENSE<br>Los Angeles County | ADDRESS OF ACCUSED (IF KNOWN) |

COMPLAINANT'S STATEMENT OF FACTS CONSTITUTING THE OFFENSE OR VIOLATION:

[21 U.S.C. § 841(a)(1)]

On or about March 27, 2013, in Los Angeles County, within the Central District of California, defendant DANIEL VILLALOBOS knowingly possessed with intent to distribute at least five grams of actual methamphetamine, that is, approximately 21.4 grams of actual methamphetamine, a Schedule II controlled substance, and approximately 50 grams of a mixture or substance containing a detectable amount of heroin, a schedule I narcotic drug controlled substance, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B)(viii) and (b)(1)(C).

BASIS OF COMPLAINANT'S CHARGE AGAINST THE ACCUSED:

(See attached affidavit which is incorporated as part of this Complaint)

MATERIAL WITNESSES IN RELATION TO THIS CHARGE: N/A

| Being duly sworn, I declare that the foregoing is true and correct to the best of my knowledge. | SIGNATURE OF COMPLAINANT<br>JASON CORDOVA /S/<br>OFFICIAL TITLE<br>Task Force Officer with the Federal Bureau of Investigation |
|---|---|

Sworn to before me and subscribed in my presence,

| SIGNATURE OF MAGISTRATE JUDGE[(1)]<br><br>PAUL L. ABRAMS | DATE<br>February 19, 2014 |
|---|---|

[(1)] See Federal Rules of Criminal Procedure 3 and 54

AUSA Angela L. Scott x6683     REC: Detention

# AFFIDAVIT

I, Jason Cordova, being duly sworn, hereby depose and say:

1. I am a Police Officer with the Pasadena Police Department ("PPD"), and I have received special deputation by the FBI pursuant to Title 21 of the United States Code as well as special deputation by the United States Marshal's Service pursuant to Title 18. As such, I am empowered to conduct investigations of, and to make arrests for, offenses enumerated in Title 18 and Title 21.

## PURPOSE OF THE AFFIDAVIT

2. This affidavit is being made in support of a criminal complaint and arrest warrant for DANIEL VILLALOBOS, hereinafter referred to as "VILLALOBOS," for violations of 21 U.S.C. § 841(a)(1): possession with intent to distribute controlled substances.

3. This affidavit is intended to show that there is sufficient probable cause for the requested criminal complaint and arrest warrant, and does not purport to set forth all knowledge of my investigation into this matter.

## TRAINING AND EXPERIENCE

4. I am a Police Officer with the PPD and have been employed in this capacity since December 2007. I am currently assigned to the PPD's Special Enforcement Section ("SES"). The primary duties of the SES are gang enforcement, street level narcotics investigations and incidents which require the use of special weapons and tactics ("SWAT"). From August of 2010 to present, I have been concurrently assigned to the Federal Bureau of Investigation's ("FBI") San Gabriel Safe Streets Task Force ("SGVSSTF").

5. The SGVSSTF conducts major violent criminal street gang and narcotics

1

investigations and is comprised of Special Agents from the FBI and local law enforcement personnel designated as Task Force Officers (TFO). As a member of the SGVSSTF and a police officer, I have participated in investigations concerning the identification of co-conspirators through the use of telephonic records and bills, financial records, photographs, and other documents. I have directed and assisted in the handling of confidential sources to successfully infiltrate various-sized gang and narcotics enterprises via intelligence gathering, participation in consensual recordings, and the monitored purchase of controlled substances. I have also participated in the debriefing of cooperating defendants. I have executed search warrants for controlled substances and I have conducted physical and electronic surveillance in connection with gang and narcotics investigations to include the use of Global Positioning System (GPS). I have authored trap and trace pen register warrants as well as GPS warrants which have led to the identification of priority targets and co-conspirators. I have authored search warrants for weapons and narcotics which have resulted in numerous seizures.

6. Based on my training and experience with the SGVSSTF, I am familiar with the methods utilized in narcotics trafficking operations and the trafficking patterns employed by narcotics organizations. I have had conversations with agents as well as other law enforcement officers about their experiences and the results of their investigations and interviews. I am knowledgeable in the methods and modes of narcotics operations and the language and patterns of narcotics trafficking. I know that narcotics traffickers often require the use of more than one cellular telephone and utilize cellular telephones to negotiate times, places schemes and manners for importing, possessing, concealing, manufacturing and distributing controlled substances and for arranging the disposition of proceeds from the sale of controlled substances. I know that the use of cellular telephones enables narcotics traffickers to maintain contact with associates, sources of

supply and customers. I also know that narcotics traffickers use fraudulent means to obtain cellular telephone accounts and frequently change their cellular telephone number and/or change the cellular service provider to thwart law enforcement efforts to intercept their communications.

## STATEMENT OF PROBABLE CAUSE

### I.  *Basis for Facts Set Forth in this Affidavit*

7.  I am familiar with the facts and circumstances described herein and make this affidavit based upon personal knowledge derived from my participation in this investigation. Conclusions I have reached are based on my training, experience, and upon information I believe to be reliable from the following sources:

   a. Oral and written reports about this investigation, which I have received from other federal agents and other law enforcement agencies;

   b. Physical surveillance conducted by federal agents or local law enforcement agencies, which has been reported to me either directly or indirectly; and

   c. Law enforcement and public databases and records.

8.  Unless otherwise noted, when I assert that a statement was made, I have personal knowledge of the information or I received the information from a law enforcement officer who provided the information to me, either verbally or in a written report. The officer had personal knowledge of the information or received it from another law enforcement officer with personal knowledge of the information.

### II.  *Identification of VILLALOBOS*

9.  VILLALOBOS was positively identified on March 27, 2013, the date of his original arrest in this case, by his own self-identification and DMV records. I have also identified

3

VILLALOBOS from the Pasadena Police Department booking records that were obtained upon his arrest.

### III.    March 27, 2013 Arrest of VILLALOBOS, Lee and Ascencio

10.     Pasadena Police Officer Jose Calderon provided me with the following information:

11.     Officer Jose Calderon has been a police officer with the City of Pasadena for approximately 12 years.  During that time, he has gained experience and training regarding gang and drug investigations.  For four years, he was assigned to the Pasadena Police Department Neighborhood Action Team, which focused on narcotics, gang and prostitution-related crime.

12.     On March 27, 2013, at approximately 12:09 a.m., Pasadena Police Officers Jose Calderon and D. Hamblin were responding to a domestic call in Pasadena, California.  The officers were in a marked Pasadena Police Department patrol vehicle and were wearing full police uniforms.

13.     As Officer Hamblin and Officer Calderon were driving west on Douglas Street in Pasadena, Officer Calderon observed a white Chevy Tahoe (later determined to be registered to VILLALOBOS) parked along the north curb of Douglas street.  Officer Calderon looked over to the vehicles as the patrol car approached it and he noticed a man later identified as Dennis Lee ("Lee") leaning away from the vehicle.  Officer Calderon believed that Lee was attempting to gain a better look at who was approaching.

14.     At that point, Officer Calderon saw Lee run toward the front of the car.  Officer Calderon believes that Lee was trying to hide or discard something.

15.     Officer Hamblin continued to drive west past the Tahoe.  As the patrol car was passing the Tahoe, Officer Calderon saw Lee crouched down in front of the Tahoe.  Once the

4

patrol car was passing the Tahoe, Officer Calderon observed Lee quickly stand up and start walking toward the patrol car.

16. Believing that Lee had originally tried to discard something, Officer Calderon asked Officer Hamblin to stop the patrol car. Officer Calderon recognized Lee as a known gang member on active parole.

17. Once Officer Calderon got out of his patrol car, he saw two additional men in the Tahoe, later identified as VILLALOBOS and Steven Ascencio ("Ascencio"). VILLALOBOS was sitting in the driver's seat and Ascencio was in the passenger seat. VILLALOBOS and Ascencio made eye contact with Officer Calderon and then began to aggressively move around, continuously reaching toward the floorboard of the vehicle.

18. Knowing that Lee was an active gang member and that it is common for gang members to carry weapons, Officer Calderon ordered Lee to the ground and he complied.

19. Believing that VILLALOBOS and Ascencio were attempting to arm themselves with weapons, Officer Calderon drew his gun and ordered VILLALOBOS and Ascencio to raise their hands. VILLALOBOS and Ascencio failed to comply with Officer Calderon's orders and, instead, continued to reach around the base of their feet.

20. While VILLALOBOS was moving around in the vehicle, Officer Calderon saw a large tattoo around the back portion of VILLALOBOS's shaved head. Based on Officer Calderon's training and experience, he knows that gang members commonly place tattoos throughout their bodies to express allegiance to their gang or city. From that and the fact that Officer Calderon recognized Lee as a gang member, he concluded that the occupants of the vehicle may also be gang members or associates.

21. Officer Calderon continued to yell commands at VILLALOBOS and Ascencio, but

they ignored Officer Calderon until he threatened to shoot them if they did not raise their hands. At that point, VILLALOBOS and Ascencio complied, but still appeared fidgety in their seats and continued to look around as if searching for an escape. Officer Calderon reminded them to keep their hands up because they repeatedly attempted to lower them.

22. Once law enforcement backup arrived, Lee, VILLALOBOS and Ascencio were arrested. Based on the totality of the circumstances, including VILLALOBOS's and Ascencio's actions while in the vehicle, Lee being a known gang member on parole, and there having been several recent gang shootings in Pasadena, Officer Calderon believed that VILLALOBOS and Ascencio may have been attempting to arm themselves with weapons while in the vehicle. Thus, Officer Calderon searched the Tahoe and found the following:

    a. Three cell phones in the passenger compartment of the Tahoe (in addition to one that VILLALOBOS had on his person);

    b. Under the driver's seat, approximately .67 grams (gross weight) of methamphetamine;

    c. In the center console in an open drawer, approximately 12.03 grams (gross weight) of methamphetamine; and

    d. On the rear floorboard of the passenger side, one digital scale.

23. Another officer searched the rear of the vehicle and found what was later determined to be approximately .71 grams (gross weight) of heroin;

24. Officer Calderon arrested Lee, VILLALOBOS and Ascencio for conspiracy to traffic narcotics.

### IV. *Statements and Additional Seizure*

25. Pasadena Police Officer Jose Calderon provided me with the following

information:

26. Officer Calderon transported Lee to the jail for booking. While in jail, Lee told Officer Calderon that he was visiting a person named "Judy" on Douglas Street and does not know VILLALOBOS or Ascencio. Lee said he walked up to the vehicle and asked the passenger Ascencio for a lighter. Lee stated that Ascencio opened the passenger door and asked Lee what he wanted, at which point the police arrived.

27. Ascencio did not make any statements.

28. While booking VILLALOBOS, Officer Hamblin removed VILLALOBOS's right shoe and found a twenty dollar bill and approximately .05 grams (gross weight) of methamphetamine.

29. VILLALOBOS was then Mirandized and agreed to speak with law enforcement officers. VILLALOBOS stated that the methamphetamine was stored in the rear drawer of the center console, which is exactly where Officer Calderon found it. VILLALOBOS also described how the methamphetamine was packaged.

30. About an hour later, VILLALOBOS saw that Ascencio was being strip searched and asked to speak with law enforcement officers again. At that time, VILLALOBOS admitted that he had methamphetamine and heroin concealed between in his buttocks. Lab reports later showed that VILLALOBOS possessed 21.6 grams of 99.1% pure methamphetamine (21.4 grams of actual methamphetamine) and 50 grams of a mixture or substance containing a detectible amount of heroin.

   a. Based on my training and experience and my knowledge of this investigation, I believe that these quantities of methamphetamine and heroin are too large for personal use, but instead, are sale quantities.

31. A search of VILLALOBOS also revealed $2,074 in cash, which he stored in 10 different bundles, nine inside his wallet and one in his sweater pocket. During pre-booking, VILLALOBOS said that he won the money playing "dice" with his "homies." VILLALOBOS also informed the jailors that he was unemployed.

    a. Based on my training and experience and knowledge of this investigation, including the way in which the money was stored and that VILLALOBOS admitted that he was unemployed, I believe that this cash represents proceeds of drug sales.

## CONCLUSION

32. I believe that the facts contained in this affidavit provide probable cause to believe that on March 27, 2013, in Los Angeles County, within the Central District of California, Daniel VILLALOBOS knowingly possessed with intent to distribute approximately 21.4 grams of actual methamphetamine, a schedule II controlled substance, and approximately 50 grams of a mixture or substance containing a detectable amount of heroin, a schedule I narcotic drug controlled substance, in violation of 21 U.S.C. § 841(a)(1).

/s/
_____
Jason Cordova
Task Force Officer
Federal Bureau of Investigation

Subscribed and sworn to before me
on this _19th_ day of February 2014.

                                            PAUL L. ABRAMS
_____
UNITED STATES MAGISTRATE JUDGE