SEAN K. KENNEDY (Bar No. 145632)
Federal Public Defender
STEPHANIE THORNTON-HARRIS (Bar No. 152785)
Research and Writing Attorney
(E-Mail: Stephanie_Thornton-Harris@fd.org)
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone:  (213) 894-4783
Facsimile:  (213) 894-0081

Attorney for Defendant
DANIEL VILLALOBOS

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>DANIEL VILLALOBOS,<br><br>Defendant. | Case No. CR 14-00132-GAF<br><br>REPLY TO GOVERNMENT'S OPPOSITION TO MR. VILLALOBOS' MOTION TO SUPPRESS EVIDENCE DERIVED FROM UNLAWFUL STOP, DETENTION, AND SEARCH<br><br>Hearing Date: September 22, 2014<br>Hearing Time: 1:30 p.m. |

Defendant Daniel Villalobos, by and through his attorney of record, Deputy Federal Public Defender Stephanie Thornton-Harris, hereby replies to the government's Opposition to his Motion to Suppress Evidence Derived from Unlawful Stop, Detention and Search.

# TABLE OF CONTENTS

Page

I. MEMORANDUM OF POINTS AND AUTHORITIES ............................................ 2

II. INTRODUCTION .................................................................................................. 2

III. ARGUMENT ........................................................................................................ 2

    A.    The Government Has Failed to Meet its Burden of Demonstrating that the Officers Had Reasonable Suspicion To Conduct An Investigatory Stop Of Mr. Villalobos ................................................................................. 2

        1.    Initial Stop ...................................................................................... 3

        2.    Mr. Villalobos's Continued Detention Was Not Justified ............. 5

    B.    The Officers Arrested Mr. Villalobos Without Probable Cause ................ 5

    C.    The Government Cannot Meet its Burden of Demonstrating that the Officers' Warrantless Search of Mr. Villalobos's Truck Was Justified. ...... 7

        1.    Mr. Villalobos Was Secured and Not in Reaching Distance of the Passenger Compartment at the Time of the Search .................... 7

        2.    No Probable Cause Existed to Arrest Mr. Villalobos, and Accordingly the Officers Lacked Probable Cause to Search for Evidence Related to Any Arrest. ......................................................... 8

        3.    Under the Totality of the Circumstances, at the Time of the Search There Was Not a Fair Probability that Contraband or Evidence of a Crime Would be Found in the Car ............................... 9

IV. CONCLUSION .................................................................................................... 14

i

1

# TABLE OF AUTHORITIES

2

Page

3

**FEDERAL CASES**

*Alexander v. County of Los Angeles*,
    64 F.3d 1315 (9th Cir. 1995) ............................................ .............11

*Arizona v. Gant*,
    556 U.S. at 332 ...........................................................................7, 8

*Arkansas v. Sanders*,
    442 U.S. 753 (1979) ........................................................................5

*Chimel v. California*,
    395 U.S. 752 (1969) ........................................................................7

*Michigan v. Long*,
    463 U.S. 1032 (1983) ...................................................................4, 5

*New York v. Belton*,
    453 U.S. 454 (1981) ........................................................................7

*Ornelas v. United States*,
    517 U.S. 690 (1996) ........................................................................8

*Overton v. Schuwerk*,
    11-CV-3263, 2014 WL 36 3609934 (C.D. III. July 22, 2014) ...................12

*Payton v. New York*,
    445 U.S. 573 (1980) ........................................................................9

*Sibron v. New York*,
    392 U.S. 40 ............................................................................12, 13

*Terry v. Ohio*,
    392 U.S. 1 (1968) .......................................................................2, 3

*United States v. Albers*,
    136 F.3d 670 (9th Cir. 1998)........................................................10, 11

*United States v. Alvarez*,
    899 F.2d 833 (9thCir. 1990)..............................................................11

*United States v. Baron*,
    860 F.2d 911 (9th Cir. 1988)...............................................................5

*United States v. Benitez-Urquidez*,
    933 F.2d 1016 (9th Cir. 1991)..............................................................4

*United States v. Bethal*,
    245 F. App'x 460 (6th Cir. 2007) .......................................................11

ii

TABLE OF AUTHORITIES
(Cont'd)

Page

**FEDERAL CASES**

*United States v. Bravo,*
    295 F.3d 1002, 1006 (9th Cir. 2002) ........................................................10

*United States v. Brooks,*
    610 F.3d 1186 (9th Cir. 2011) .................................................................9

*United States v. Brunick,*
    374 Fed. App'x. 714 (9th Cir. 2010) .......................................................8

*United States v. Buffington,*
    815 F.2d 1292 (8th Cir. 1987) .................................................................11

*United States v. Bullock,*
    No. 08-CR-194, 2009 WL 1770120 ( E.D. Wisconsin 2009) ...................10

*United States v. Colin,*
    314 F.3d 439 (9th Cir. 2002) ...................................................................2

*United States v. Doe,*
    219 F.3d 1009, 1014 (9th Cir. 2000).) ....................................................11

*United States v. Del Vizo,*
    918 F.2d 821 (9th Cir. 1990) ...........................................................5, 6, 7

*United States v. Evans,*
    445 F. App'x. 29, 31 (9th Cir. 2011) .......................................................10

*United States v. Feliciano,*
    45 F.3d 1070 (7th Cir. 1995) ...............................................................3, 5

*United States v. Flippin,*
    924 F.2d 163 (9th Cir. 1991) ................................................................4, 5

*United States v. Franklin,*
    No. 1:09-CR-11, 2009 WL 1952082 .......................................................10

*United States v. Garcia,*
    496 Fed. App'x. 749, 750 (9th Cir. 2012) .............................................3, 5

*United States v. Lewis,*
    311 F. App'x 58, 60-61 (9thCir. 2009) ...................................................11

*United States v. Lopez-Soto,*
    205 F.3d 1101 (9th Cir. 2000) .................................................................2

*United States v. Luong,*
    539 F. App'x 802, 803 (9th Cir. 2013) ...................................................10

iii

1

# TABLE OF AUTHORITIES
(Cont'd)

2

Page

**FEDERAL CASES**

3

*United States v. Martinez-Cortes*,
    566 F.3d 767, 770-71 (2009) .............................................................11

4

*United States v. McCraney,*
    674 F.3d 614 (6h Cir. 2012)................................................. 8

5

6

*United States v. Montoya de Hernandez,*
    473 U.S. 531, 538 (1985) ....................................................11

7

*United States v. Nora,*
    No. 12-50485, 2014 WL 4235955................................................9

8

9

*United States v. Parr,*
    843 F.2d 1228 (9th Cir. 1988) ....................................................10

10

*United States v. Rodgers,*
    656 F.3d at 1028 .............................................................7, 9

11

12

*United States v. Smith,*
    223 F.3d 554 (7th Cir. 2000) ....................................................12

13

*United States v. Spencer,*
    1 F.3d 742 (9th Cir. 1992) ....................................................10

14

15

*United States v. Martinez-Cortes,*
    566 F.3d 767 (2009) ....................................................10

16

*United States v. Strickler,*
    490 F.2d 378 (9th Cir. 1974)................................................6, 7

17

18

*United States v. Wheatley,*
    981 F.2d 1261 (9th Cir. 1992)................................................12

19

20

21

22

23

24

25

26

27

28

iv

# I.  MEMORANDUM OF POINTS AND AUTHORITIES

# II.  INTRODUCTION

When Mr. Villalobos was held at gun point and detained in a patrol car on March 27, 2013, his truck was searched without reasonable suspicion that criminal activity was afoot and without probable cause to believe that contraband or other evidence of a crime was present.  The actions of the Pasadena Police that evening violated Mr. Villalobos's Fourth Amendment right to be free from unreasonable search and seizure because the officers lacked reasonable suspicion to believe that he was engaged in criminal activity.  In addition, the officers lacked probable cause to search the vehicle that Mr. Villalobos occupied.  Thus, the Court should suppress all evidence resulting from the illegal detention, and functional arrest, and all "fruits" thereof, including, but not limited to, the narcotics, cell phones, scales, and Mr. Villalobos's statements made before, during, and after his arrest.

# III.  ARGUMENT

**A.     The Government Has Failed to Meet its Burden of Demonstrating that the Officers Had Reasonable Suspicion To Conduct An Investigatory Stop Of Mr. Villalobos.**

To lawfully conduct an investigatory stop, an "officer must have reasonable suspicion that the person is engaging in illegal activity." *United States v. Colin*, 314 F.3d 439, 442 (9th Cir. 2002); *see also Terry v. Ohio*, 392 U.S. 1 (1968).  For the officer to form a reasonable suspicion, he or she must have "specific, articulable facts, upon which, together with objective and reasonable inferences, form the basis for suspecting that the particular person detained is engaged in criminal activity." *United States v. Lopez-Soto*, 205 F.3d 1101, 1105 (9th Cir. 2000) (internal quotation marks

2

omitted).  Reasonable suspicion cannot be based on an officer's "unparticularized suspicion or hunch."  *Terry*, 392 U.S. at 28.

### 1.    Initial Stop

Here, Officers Calderon and Hamblin did not have specific articulable facts suggesting that Mr. Villalobos or Mr. Ascencio were involved in criminal activity, and thus the initial investigatory stop was not permissible.  The officers were responding to an unrelated domestic call, and Mr. Villalobos and Mr. Ascencio were merely sitting in a parked SUV.  The fact that a known gang member was *near* the car but not *in* the car and in addition was *complying* with the officers' commands- does not suggest that *Mr. Villalobos or Mr. Ascencio* were involved in any criminal activity and thus does not provide reasonable suspicion for the stop.  This case is distinguishable from cases such as *United States v. Garcia*, 496 Fed. App'x. 749, 750 (9th Cir. 2012)  and *United States v. Feliciano*, 45 F.3d 1070, 1074 (7th Cir. 1995), where the *individuals who were stopped* were identifiable as gang members.  The defendants in those cases didn't just happen to be *near* gang members—they were identifiable *as* gang members when they were initially stopped.[1]

---

[1] In *Garcia*, additional distinguishing factors in addition to the clothing he was wearing that identified him as a gang member included the defendant riding as passenger in a vehicle that was moving with its headlights off and displaying evasive behavior.  *Garcia,* 496 Fed. App'x at 750.   Additional facts giving rise to a finding of reasonable suspicion in *Feliciano*, included a report to police officers by the would-be victim in regard to defendant's earlier actions.  *Feliciano,* 45 F.3d at 1072.   The would-be victim told the officers that he thought the defendant was going to mug him when the defendant tried to lure him away from a train station to an embankment area, which gave them reasonable suspicion for the stop.  *Id.*

The additional fact that there had been several gang related shootings/homicides and crimes throughout the city within the last couple of months also does not suggest that Mr. Villalobos or Mr. Ascencio were involved in any criminal activity.  *See United States v. Benitez-Urquidez,* 933 F.2d 1016 (9th Cir. 1991) (holding that officers lacked reasonable suspicion to make an investigatory automobile stop based on  (1) the car being unfamiliar, (2) it was parked near a known arrestee's house, and (3) there had been three burglaries recently in the area but not one in progress being observed).  Similar to *Benitez-Urquidez*, the mere fact that Mr. Villalobos's car was parked near a suspicious person (Mr. Lee) combined with the fact that there had been crime in the area recently did not suggest that Mr. Villalobos or Mr. Ascencio were involved in criminal activity.

In his motion, Mr. Villalobos put forth evidence that neither he nor Mr. Ascencio was reaching toward the floor of the car before the officers drew their weapons and stopped them, and thus the government's argument that this fact suggested that the men were involved in criminal activity is unfounded.  However, even if the men were reaching around on the floor before the stop, this conduct does not suggest that they were involved in criminal activity and therefore cannot constitute reasonable suspicion.

The cases cited by the government are distinguishable.  Unlike the cases offered by the government, here there was no traffic violation, no illegal parking, no exchange with law enforcement of any kind, and no border exception present prior to the initial investigatory stop.  For example, in *Michigan v. Long*, 463 U.S. 1032, 1037-39 (1983) the Court found reasonable suspicion after officers stopped defendant upon observing his erratic driving.  In *United States v. Flippin*, 924 F.2d 163 (9th Cir. 1991), officers had reasonable suspicion to stop the defendant because her companion was carrying a large knife in plain view.  By contrast, here Mr. Villalobos and Mr. Ascencio were not observed breaking any traffic law or performing any objectively dangerous activity.  Even if the Court finds that Mr. Villalobos and Mr. Ascencio were reaching around on

4

the floor of the truck, that conduct does not violate any law (as in *Long*) or constitute dangerous activity.

Finally, at the time of the initial stop, the officers had not yet seen the tattoo on Mr. Villalobos's head, and thus the fact that the tattoo might link him to a gang cannot be considered in the analysis of whether the initial stop was justified. *See* Police Report at 4 ("I drew my department issued gun and ordered them to raise their hands at gun point. . . . As I watched Villalobos move around in the vehicle, I noticed Villalobos's shaved head exposing a large tattoo around the back portion of his head. It is common for gang members to place tattoos throughout their body . . . . "). Accordingly, the facts here are distinguishable from those in *United States v. Garcia*, 496 Fed. App'x. 749, 750 (9th Cir. 2012) (unpublished) and *United States v. Feliciano*, 45 F.3d 1070, 1074 (7th Cir. 1995), which were cited by the government. Unlike in the instant case, in both of those cases the defendants were identifiable as gang members *at the time* of the initial stop. *See id.*

### 2. Mr. Villalobos's Continued Detention Was Not Justified

Subsequently, the officers stopped all three men and placed them in police cars. Once the men were secured, even the officers' reported reason for the stop ended. The detention of the men secured the location and removed any potential threat that they were armed and dangerous.

## B. The Officers Arrested Mr. Villalobos Without Probable Cause.

Citing *United States v. Del Vizo*, 918 F.2d 821 (9th Cir. 1990) the government contends that Mr. Villalobos was not under arrest at the time the truck was searched. In *Del Vizo*, the Court explained that, "in determining whether an official detention has ripened into an arrest, we consider the 'totality of the circumstances'" (citing *United States v. Baron*, 860 F.2d 911, 914 (9th Cir. 1988) (Although officers never announced it, the defendant was held to be under arrest after he was ordered out of the van at gunpoint, forced to lie down on the street and then handcuffed)).

In *Del Vizo*, the officers responded to a confidential informant's tip and began surveillance of a specific house and its occupants.  Five miles from the house, officers observed the defendant driving his van in tandem with one of the occupants of the house that was being watched.  The defendant and the other person stopped and had a conversation at a gas station.  The officers observed defendant next drive his van to another house and leave it there.   At the second house another person came out and looked into the van at least two times.   The officers observed a third person place a bag that may have contained dugs in the van. The officers continued observations and saw yet another individual driving the van.  Finally, the officers saw defendant meet briefly with the person who placed the bag in the van, and defendant subsequently drove off in the van.  The defendant once more drove in tandem with the person described above. The officers decided to stop defendant at this point.  *Id*. at 823.

The officers ordered the defendant to out of his van at gunpoint.  He was forced to lie down on the street and handcuffed.  Regarding the detention the Court stated that, " Even without a statement that he was under arrest, the absolute curtailment of Del Vizo's liberty clearly would have lead a reasonable person to believe that he was not free to leave." *Id*. at 825 citing *United States v. Strickler*, 490 F. 2d 378, 380 (9th Cir. 1974) .  The  Court concluded that Del Vizo had been arrested but found that there was probable cause for arrest.  Here, pursuant to *Del Vizo*, Mr. Villalobos was functionally under arrest.

With respect to probable cause, however,  *Del Vizo* can be distinguished from Mr. Villalobos' case as there was no confidential informant or surveillance involved to support probable cause here.  Officers did not observe Mr. Villalobos getting in out of cars or packages being placed in cars.  In contrast, the officers in this case were responding to a domestic call and Mr. Villalobos sat in a parked car.  The officers like the officers in *Del Vizo* placed Mr. Villalobos under arrest but without probable cause. For the same reasons that the officers lacked reasonable suspicion, they also lacked probable cause.

6

**C.    The Government Cannot Meet its Burden of Demonstrating that the Officers' Warrantless Search of Mr. Villalobos's Truck Was Justified.**

Warrantless searches of cars are only permitted when an arrestee is unsecured and within reaching distance of the passenger compartment or, where probable cause exists to believe that evidence of the crime of the arrestee might be found in the vehicle. *Arizona v. Gant*, 556 U.S. 332 (2009).; *see also New York v. Belton*, 453 U.S. 454 (1981); *Chimel v. California*, 395 U.S. 752 (1969). "[T]he Government bears the burden of proving that a specific exception to the warrant requirement applies." *United States v. Rodgers*, 656 F.3d at 1028. Here, the government cannot prove that a specific exception to the warrant requirement applies.

**1.    Mr. Villalobos Was Secured and Not in Reaching Distance of the Passenger Compartment at the Time of the Search**

Similar to the defendant in *Gant*, even assuming the facts put forth by the government are valid, Mr. Villalobos was not within reaching distance of the passenger compartment of his truck and so the search of his truck did not fall into the "officer safety" exception to the warrant requirement. *Gant*, 556 U.S. at 332.

Here, according to the government, Mr. Villalobos was handcuffed and secured 15 feet away from his truck behind a police car during the search.[2] Even assuming the government's facts are true, Mr. Villalobos was not within reaching distance of the passenger compartment of his truck: Mr. Villalobos could not possibly reach for a weapon in the passenger compartment 15 feet away from him while he was being detained in handcuffs and accompanied by officers, and thus endanger the officers. *See Gant*, 556 U.S. at 332 (holding that the police may "search a vehicle incident to a

---

[2] Mr. Villalobos disputes the location and instead recalls being in the squad car during the search.

recent occupant's arrest only when the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search"); *United States v. McCraney,* 674 F.3d 614, 619-20 (6th Cir. 2012) (holding that no officer safety exception existed under *Gant* when the two defendants were not handcuffed and stood two to three feet from the rear bumper of their car with three officers standing around them, as the "officers outnumbered the detainees" and "the officers could not reasonably believe [defendants] were 'within reaching distance' of the passenger compartment at the time of the search"); *see also United States v. Brunick*, 374 Fed. App'x. 714 (9th Cir. 2010) (finding that the holding in *Gant* precluded a search of a car pursuant to the officer safety exception when the defendants were secured via handcuffs and seated in a squad car).

Moreover, as in *Gant* and *McCraney*, a number of officers were present to secure the scene.  While in *Gant* there were five officers present and in *McCraney* three officers were present, here, approximately seven to nine officers were present, far outnumbering Mr. Villalobos and Mr. Ascencio.  Accordingly, there were plenty of officers present to monitor safety and ensure that the men remained in the locked police cars or sufficiently detained at a reasonable distance from the truck.

## 2.   No Probable Cause Existed to Arrest Mr. Villalobos, and Accordingly the Officers Lacked Probable Cause to Search for Evidence Related to Any Arrest.

The government cited to *Ornelas v. United States*, 517 U.S. 690, 696 (1996) stating that probable cause to search exists where the known facts  and circumstances are sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found.  At the time of this search, the officers had no probable cause to believe evidence of the offense of any arrest would be in the car.  *See id.* at 346.

Accordingly, at the time of the search, even if the action of reaching down on the floor of the truck while held at gunpoint provided a reason for detention, it certainly

8

did not amount to probable cause to arrest Mr. Villalobos or to search his car. Moreover, after allegedly failing to immediately comply with the commands of the officers in this way, Mr. Villalobos thereafter fully complied with all instructions. Accordingly, since no valid arrest had yet been made, there was no justification for a warrantless search incident to that arrest to identify and preserve evidence.  *See Payton v. New York*, 445 U. S. 573(1980), *see also United States v. Nora*, No. 12-50485, 2014 WL 4235955.  (Unlawful warrantless arrest/overbroad warrant and subsequent search of defendant's home resulted in suppression of physical evidence and statements.)

> **3.**  **Under the Totality of the Circumstances, at the Time of the Search There Was Not a Fair Probability that Contraband or Evidence of a Crime Would be Found in the Car.**

Separate from an arrest, "[u]nder the automobile exception . . . , police may conduct a warrantless search of a vehicle if there is probable cause to believe that the vehicle contains evidence of a crime."  *United States v. Brooks*, 610 F.3d 1186, 1028 (9th Cir. 2011).  In the present case, under the totality of the circumstances, at the time of the search there was not a fair probability that contraband or evidence of a crime would be found in the truck.  *See Rodgers*, 656 F.3d at 1028.  In an attempt to justify the search, Office Calderon claimed that Mr. Villalobos and Mr. Ascencio did not comply with his orders given simultaneously with his drawn weapon and that Mr. Villalobos reached "aggressively" toward the floor board.  Calderon Report at p.4.  A common sense view of the incident supports the assertion that Mr. Villalobos feared for his safety when Officer Calderon pointed his police issued weapon at him, and thus wasted little time raising his hands.  However, even if Mr. Villalobos and Mr. Ascencio did not immediately comply with commands and were seen reaching toward the floor, those actions did not give the officers probable cause to search the vehicle.  *See McCraney*, 674 F.3d at 621 (finding no reasonable suspicion (and accordingly no probable cause) to search a vehicle when the driver did not immediately stop the car after officers activated their lights, the driver and passenger were observed leaning over

9

toward the floor of the car, an officer testified that "this kind of movement led to the discovery of contraband or firearms '95 to 100 percent' of the time", and one of the occupants attempted to exit the car twice during the detention).

In its opposition, the government cites cases such as *United States v. Spencer*, 1 F.3d 742, 743 (9th Cir. 1992) (Totality of the circumstances included a moving motor vehicle without functioning headlights, and defendant had no driver's license and officers saw a different person driving the same car the night before with a different license plate) and *United States v. Evans*, 445 F. App'x. 29, 31 (9th Cir. 2011) (The Court addressed the proper scope of a traffic stop and whether the inquiry properly extended to the passenger when Defendant made furtive movements and admitted that she was trying to hide drug paraphernalia *prior* to the search.). In each of these cases, furtive movement was added to other factors which, as a whole, gave rise to the respective courts finding that the officers demonstrated probable cause to arrest. Furtive movement alone was never the basis for the probable cause being sufficient. Importantly, each of these cases started with a traffic violation or some other outside factor.[3]  In the instant case, Mr. Villalobos sat in his parked SUV.  He was not the

---

[3] Although this list is not exhaustive, the government offers primarily four types of cases: 1) **Those with clear reasonable suspicion and or probable cause based on a traffic violation or similar incident**. *See United States v. Parr,* 843 F.2d 1228 (9th Cir. 1988)*, United States v. Luong*, 539 F.App'x 802, 803 (9th Cir. 2013) (Defendants were initially stopped for a traffic violation in a case where the government obtained a wiretap.  Defendants unsuccessfully challenged the wiretap.  The Court concluded, "Police officers had probable cause because the car was registered to a woman with an outstanding warrant for drug-related charges, and defendant had gang tattoos and admitted gang membership to a gang known to deal drugs, and finally, the officer saw ecstasy on floor of car), *United States v. Franklin*, No. 1:09-CR-11, 2009 WL 1952082, 5 (Officer observed the defendant run a stop sign after an apparent drug transaction.  The defendant refused to comply with orders both inside and outside of the car). *United States v. Bullock* No. 08-CR-194, 2009 WL 1770120 ( E.D. Wisconsin 2009)  (Defendant stopped based on a noise ordinance violation, and he delayed pulling over his car to curb.  While pulling over, officers saw defendant lean over to the center area of the car console and believed he might have a weapon.  The court found probable cause.  However, here there were only two officers, a delay in pulling over and then furtive gestures distinguishable from the Villalobos facts.  2) **Border cases where there is broader latitude to search at the outset**. *See United States v. Bravo*, 295 F.3d 1002, 1006 (9th Cir. 2002), (Inspector's detention of the defendant at the border did not become an arrest when defendant was briefly handcuffed…, "Thus it has long been

10

subject of surveillance, a warrant, or even a minor traffic violation.  Moreover, he denies making furtive gestures and, without more, his status as an alleged gang member does not form a sufficient basis for probable cause for a search of his vehicle.

Indeed, Mr. Villalobos's status as an alleged gang member cannot serve as a basis for probable cause to search his truck.  In *United States v. Bethal,* 245 F. App'x 460 (6th Cir. 2007), the court held that a defendant's status as a gang member as well as being a suspect in shooting and in association with others suspected of having guns was not sufficient to establish probable cause for search of his home.  Specifically, the court found that the defendant's status as a gang member and a suspect in the shooting, together with his association with others who reportedly kept guns and drugs at their home, did not create fair probability that guns or drugs would be found in defendant's

---

established that routine search at our international borders do not require objective justification, probable cause, or a warrant." (citing  *United States v. Montoya de Hernandez*, 473 U.S. 531, 538 (1985).  (Defendant was deemed to be in custody despite the fact that "the government has more latitude to detain persons in in a border-crossing context (citing *United States v. Doe*, 219 F.3d 1009, 1014 (9th Cir. 2000).)  3) **Cases with tips either from confidential sources or unrelated reporters**. *See, Alexander v. County of Los Angeles*, 64 F.3d 1315 (9th Cir.  1995), *United States v. Alvarez*, 899 F.2d 833 (9thCir. 1990), *United States v. Buffington*, 815 F.2d 1292 (9th Cir. 1987).  In the instant case there was no traffic violation, the border was not implicated, and there was no report from a witness or confidential informant, and 4) **Challenge to affidavit for search warrant**. *See United States v. Lewis*, 311 F. App'x 58, 60-61 (9thCir. 2009) (The defendant challenged whether the affidavit for the search warrant demonstrated probable cause under the totality of circumstances, probable cause shown after the defendant was seen with a large amount of cash at the scene of a drive by shooting, seen moving items in and out of the trunk, and seen flashing gang signs at a fleeing suspect vehicle), *United States v. Albers*, 136 F.3d 670 (9th Cir. 1998) (Case involving the search of a house boat for evidence of BASE jumping—parachuting from fixed objects.  Albers had a reduced expectation of privacy because at any time an authorized person could have stopped and boarded boat to determine compliance with safety equipment regulations and operation.), *United States v. Martinez-Cortes*, 566 F.3d 767, 770-71 (2009) (Officers searched a vehicle that had been backing out of the driveway at a location where officers had a valid search warrant to search the residence and vehicles registered and located on the property's curtilage. The court reasoned that officers had reason to believe the warrant authorized a search of the vehicle to determine whether an occupant of the residence was in the vehicle and to protect the safety of the officers).

home, as is required to establish probable cause to search a defendant's home .  Courts have typically required more than alleged gang status to demonstrate probable cause. *See Overton v. Schuwerk*, 11-CV-3263, 2014 WL 3609934 (C.D. Ill. July 22, 2014) (The arresting officer had information that the defendant had a prior history of gang involvement, was considered armed and dangerous, and there was an outstanding warrant resulting in a finding of probable cause.),  *United States v. Smith*, 223 F.3d 554 (7th Cir. 2000), (Police officer had probable cause to arrest defendant based on the officer's statement that the defendant and three other men were standing near a building known to be gang members' gathering place, that one man was recognized as gang member, and that, upon the officer's arrival, the defendant and the other men dropped ammunition to the ground and tried to leave).  In the instant case, the sole reasons stated for the arrest and search were that Officers saw a gang tattoo on Mr. Villalobos's head and that they subjectively believed that he did not raise his hands quickly enough. Under the totality of the circumstances, those facts do not amount to probable cause. There were no additional facts such as a traffic violation, a warrant or prior knowledge regarding Mr. Villalobos, and the events in question did not take place at a border location or special check point

In addition, the officer claimed he knew that Mr. Lee was a gang member and believed he was armed based on a prior incident.  In connection with that he believed that Mr. Villalobos and Ascencio were trying to arm themselves.  The mere knowledge that Mr. Lee was a gang member and his close proximity to Mr. Villalobos were not enough to establish probable cause to arrest.

The fact that Mr. Lee was a gang member on the street near the vehicle did not mean that the passengers in a car parked nearby were automatically dangerous and armed.  *See United States v. Wheatley*, 981 F.2d 1261 (9th Cir. 1992) (holding that probable cause does not transfer to another by mere proximity); *see also Sibron v. New York,* 392 U. S. 40, 62-63. (1968).   In *Sibron,* the Court stated:

12

Turning to the facts of Sibron's case, it is clear that the heroin was inadmissible in evidence against him. The prosecution has quite properly abandoned the notion that there was probable cause to arrest Sibron for any crime at the *time Patrolman Martin accosted him in the restaurant, took him outside and searched him.  The officer was not acquainted with Sibron and had no information concerning him.  He merely saw Sibron talking to a number of known narcotics addicts over a period of eight hours. It must be emphasized that Patrolman Martin was completely ignorant regarding the content of these conversations, and that he saw nothing pass between Sibron and the addicts.* So far as he knew, they might indeed 'have been talking about the World Series.' *The inference that persons who talk to narcotics addicts are engaged in the criminal traffic in narcotics is simply not the sort of reasonable inference required to support an intrusion by the police upon an individual's personal security.  Nothing resembling probable cause existed  until after the search had turned up the envelopes of heroin.  It is axiomatic that an incident search may not precede an arrest and serve as part of its justification.*   (emphasis added).

*Id.* at 62-63.  In addition, the mere fact that the officer believed he saw Mr. Villalobos reach aggressively toward the floor at gunpoint, without more, did not give him probable cause to search the car.  The facts that officers next ordered Mr. Villalobos out of the car, he was compliant after that point, he was not armed or acting in a dangerous manner but instead sat cooperatively in a police car, and no officers noticed any weapons or anything else suspicious, weigh contrary to a finding of probable cause to search the truck for weapons.  Considering the totality of the circumstances, there was

13

no probable cause to search the car, and all evidence obtained from the unconstitutional search should be suppressed.

## IV.  CONCLUSION

Mr. Villalobos and Mr. Ascencio were stopped by Officer Calderon and Officer Hamblin even though there was no reasonable suspicion that a crime was being committed.  When Mr. Villalobos refused to consent to a search of his SUV, Officer Calderon and another officer searched anyway, even though Mr. Villalobos and Mr. Ascencio were already wrongfully arrested.  Thus, the search of Mr. Villalobos's SUV was unconstitutional and all of the evidence obtained from the search should be suppressed.  In addition, the police officers obtained statements from Mr. Villalobos both in the police car and in the form of cell phone texts.  Accordingly, all statements obtained and evidence derived from the statements should be suppressed.

DATED:  September 10, 2014          By  */s/ Stephanie Thornton-Harris*
                STEPHANIE THORNTON-HARRIS
                Attorney

14