1  SEAN K. KENNEDY (Bar No. 145632)
Federal Public Defender
2  CHRISTOPHER W. DYBWAD (Bar No. 235234)
(E-Mail: Christopher_Dybwad@fd.org)
3  Deputy Federal Public Defender
321 East 2nd Street
4  Los Angeles, California 90012-4202
Telephone: (213) 894-4283
5  Facsimile: (213) 894-0081

6  Attorneys for Defendant
DANIEL VILLALOBOS

7

8

9              UNITED STATES DISTRICT COURT

10            CENTRAL DISTRICT OF CALIFORNIA

11                  WESTERN DIVISION

12

13  UNITED STATES OF AMERICA,           Case No. CR 14-132-GAF

14              Plaintiff,

15       v.                             **DEFENDANT'S OPPOSITION TO
                                        GOVERNMENT'S MOTION TO
16  DANIEL VILLALOBOS,                  UNSEAL, OR IN THE
                                        ALTERNATIVE, TO QUASH
17              Defendant.              SUBPOENAS ISSUED EX PARTE
                                        AND UNDER SEAL BY
18                                      DEFENDANT DANIEL
                                        VILLALOBOS**

19

20

21

22

23

24

25

26

27

28

# I.

## PRELIMINARY STATEMENT

On August 15, 2014, counsel for Mr. Villalobos filed an *Ex Parte* Application For Issuance and Early Return of Subpoenas Duces Tecum.  This Application contained a declaration from counsel outlining exactly why Mr. Villalobos was requesting early return of the subpoenas.  Attached to the *Ex Parte* Application was a Proposed Order that the subpoenaed materials be provided to the Court by September 12, 2014 at 12:00 p.m.  Counsel's filing complied both with Federal Rule of Criminal Procedure 17 and Local Criminal Rules 17-1 and 17-4.  Local Criminal Rule 17-4 explicitly states that the defense can apply for subpoenas without notice to the government, as was done in this case.  As the 1966 Amendments to Rule 17 state, "Criticism has been directed at the requirement that an indigent defendant disclose in advance the theory of his defense in order to obtain the issuance of a subpoena at government expense while the government and defendants able to pay may have subpoenas issued in blank without any disclosure."  This Court, after review of the application, issued the Order on August 18, 2014.

In its motion, the government forthrightly admits that the Pasadena City Attorney's Office—in violation of this Court's Order—disclosed the existence of the subpoenas to counsel for the government.  In response to this unlawful disclosure, the government has moved to unseal the subpoenas, or, in the alternative, to quash the subpoenas.  These proposed remedies are improper, and would simply compound the error made by the Pasadena City Attorney's Office.

This Court should deny the government's motion.  **First**, the subpoenas were properly issued, after this Court's review, and comply with both Federal Rule of Criminal Procedure 17 and Local Criminal Rules 17-1 and 17-4.  If material is returned pursuant to these subpoenas which fall within the defense's reciprocal discovery obligations under Rule 16, then that material will promptly be provided to the government.  **Second**, the government lacks standing to oppose the subpoenas on behalf

of a third-party agency, a third-party agency that has a legal department that is able to articulate its own position in front of this Court. **Third**, unsealing the subpoenas and providing them to the prosecutor in this case would further intrude upon Mr. Villalobos' constitutional and statutory rights, and is a proposed remedy that would necessitate a future hearing about whether the government has shaped its legal strategy as a result of the disclosure of the subpoenas.

## II.

## ARGUMENT

A.     **The Subpoenas, and this Court's Order, Complied with Federal Rule of Criminal Procedure 17 and Local Criminal Rules 17-1 and 17-4.**

The government argues that this Court's issuance of the subpoena was improper. The government ignores the proper grounds for quashing a Rule 17 subpoena.  *See United States v. Nixon*, 418 U.S. 683, 698 (1974) ("A subpoena for documents may be quashed if their production would be 'unreasonable or oppressive,' but not otherwise.").  That the government makes no attempt to argue that compliance would either be unreasonable or oppressive is telling as a matter of fact, and self-defeating as a matter of law.

Ignoring the Rule, the government instead argues that the subpoena sought information subject to the government's discovery obligations.  According to the government, Mr. Villalobos should have pursued any documents through Rule 16.  The government is mistaken.[1]

---

[1] No case cited by the government stands for the proposition that a Rule 17(c) subpoena issued to a third party which seeks otherwise "discoverable" information is improper.  Indeed, as the court noted in *Tomison*, "[t]he notion that because Rule 16 provides for discovery, Rule 17(c) has no role in the discovery of documents can, of course, only apply to documents in the government's hands; accordingly, Rule 17(c) may well be a proper device for discovering documents in the hands of third parties."); *see also Nixon*, 418 U.S. at 700 n.12.  Given a defendant's Fifth and Sixth Amendment rights to the pre-trial production of evidence and to protect his trial strategy, the

1    In applying to the Court for issuance of the Rule 17 subpoena, the defense

2    submitted an *in camera* declaration of counsel satisfying the *Nixon* requirements.

3    Despite the government's invitation to do so, Mr. Villalobos has no obligation to

4    disclose the contents of that declaration or to satisfy the government, rather than the

5    Court, that the subpoena request satisfied *Nixon*.  The right to apply *ex parte* for a Rule

6    17 subpoena was added to the Rule in a 1966 amendment, for the purpose of assuring

7    that indigent defendants would not have to disclose their defense in exercising their

8    right to compulsory process.  *See* Fed. R. Crim. P. 17 advisory committee note (1966

9    amendment).

10    The Ninth Circuit has approved of filing items *ex parte in camera* where a party

11    has "no obligation to disclose them."  *United States v. Gurolla*, 333 F.3d 944, 951 (9th

12    Cir. 2003) (quoting *United States v. Klimavicius-Viloria*, 144 F.3d 1249, 1261 (9th Cir.

13    1998)); *see also United States v. Peltier*, 693 F.2d 96, 97-98 (9th Cir. 1982)  (per

14    curiam) (reviewing offer of proof made *in camera* by defendant's counsel below).  This

15    is so because the need for *in camera* review of a criminal defendant's memorandum of

16    privileged information is critical to protecting a defendant's Sixth Amendment right to

17    due process.  *Tomison*, 969 F. Supp. at 592-93.  The fact that a defendant has "a right to

18    protect his trial strategy contraindicates a noticed motion practice requiring disclosure

19    to the government of the defendant's theory of the case as a precondition to obtaining"

20    access to the courts.  *Id.* at 593.  Requiring a defendant to divulge his theory of defense

21    in order to avail himself of constitutional protections would only serve to undermine

22    that defendant's right to a fair trial.  *Id.*

23    Moreover, where a subpoena seeks the issuance of documents that are relevant

24    to the determination of his guilt, the defendant has a constitutional right to production

---

26    government's interpretation of Rule 17(c) is untenable.  *See United States v. Beckford*,
      964 F. Supp. 1010, 1027 (E.D. Va. 1997) ("Forcing any defendant to confront the
27    choice between issuing a pre-trial subpoena duces tecum and disclosing his defense to
      the Government places an unconstitutional limitation on the defendant's right to
28    compulsory process.").

4

of those documents.  *See, e.g., Nixon*, 418 U.S. at 712-13 (holding that quashing a Rule 17(c) subpoena "based on the generalized interest in confidentiality" would "cut deeply into the guarantee of due process of law and gravely impair the basic function of the courts" and that "the constitutional need for production of relevant evidence in a criminal proceeding is specific and central to the fair adjudication of a particular criminal case"); *see also Tomison*, 969 F. Supp. at 593 ("where evidence relevant to guilt or punishment is in a third party's possession and is too massive for the defendant to adequately review unless obtained prior to trial, pre-trial production through Rule 17(c) is necessary to preserve the defendant's constitutional right to obtain and effectively use such evidence at trial").

Contrary to the government's argument, the defendant's constitutional right to production extends to documents that may be used for impeachment purposes.  *See Nixon*, 418 U.S. 702 (concluding that district court had not erred in authorizing the issuance of a subpoena where the documents produced had both impeachment value and "other valid potential evidentiary uses for the same material").

For these reasons, the Court's issuance of the subpoena was proper.  It is for this Court to say whether the defense has complied with the requirements of Rule 17, not the United States Attorney's Office.  This Court has already made that finding, and the government offers no reason to revisit the prior ruling.

**B.** **The Government Lacks Standing to Oppose the Subpoena, Or, In the Alternative, Has Violated Its Discovery Obligations Under Federal Rule of Criminal Procedure 16.**

Rule 17(c) authorizes the disclosure of documents before trial.  The Rule also authorizes the party to whom the subpoena is directed to move to quash by way of a prompt motion "if compliance would be unreasonable or oppressive."  Federal Rule of Criminal Procedure 17(c)(2).  Here, the party to whom the subpoena was directed was the Pasadena Police Department ("PPD").  It is the government's burden to

5

demonstrate that it, rather than the PPD, has standing to challenge a Rule 17 subpoena. *See KVOS, Inc. v. Associated Press*, 299 U.S. 269, 278 (1936). The government claims that the United States Attorney's Office is the appropriate entity to move to quash the subpoena on behalf of PPD.

Under Rule 17, "the party to whom the subpoena is directed is the only party with 'standing' to oppose it. This is because no matter what interest a party to whom the subpoena is not directed may have, it does not arise out of the difficulty of compliance." *United States v. Tomison*, 969 F. Supp. 587, 591-92 (E.D. Cal. 1997) (internal footnote omitted). In other words, since the Rule itself provides the grounds for quashing the subpoena—that compliance would be unreasonable or oppressive—it follows that a party who is not being directed to comply has no basis for claiming it cannot legally do so. "Accordingly the government lacks standing to raise the exclusive grounds for quashing the subpoena, since it lacks the sine qua non of standing, an injury in fact relative to those grounds." *Id.* at 596.

The cases relied on by the government are inapposite. *United States v. Eden*, 659 F.2d 1376, 1381 (9th Cir. 1981), which the government cites as "allowing the government, i.e., the U.S. Attorney's Office, to move to quash a defense subpoena served on the Department of Education," says nothing on the issue of standing. Nor is *United States v. Raineri*, 670 F.2d 702, 712 (7th Cir. 1982), of help to the government. In *Raineri*, the defense subpoenaed *a witness* first called by the government during trial. The Seventh Circuit found the government had standing to move to quash the subpoena because the government had an interest at trial in preventing undue lengthening of the trial, harassment of the witness, and preventing prejudicial overemphasis on the witness's credibility. *Id.* at 712. *Raineri* did not address Rule 17(c), which calls for the production of *documents* and which clearly states the grounds

6

upon which a motion to quash may be heard and thus what party may challenge the subpoena.[2]

The government has also asked this Court to unseal and disclose all of Mr. Villalobos' Rule 17 subpoenas in this matter to determine the appropriateness of any other discovery requests. The government has provided no authority for such a remarkable request. Nor has it provided any authority explaining how it has standing to assert such a request on behalf of third parties who have failed to seek any relief from this Court. It bears repeating that it is the Court, not the United States Attorney's Office, which must determine whether the defense has presented "good cause" for the issuance of a subpoena, and the government's request is a perversion of the adversarial process.

Finally, standing is premised on a moving party's "proprietary interest" in the materials sought. *See Ponsford v. United States*, 771 F.2d 1305 (9th Cir. 1985). If the United States Attorney's Office is asserting that it has a proprietary interest in the records sought, then they are records that should be turned over under the United States Attorney's Office discovery obligations. *See* Rule 16(a)(1)(E) (requiring disclosure of documents and objects within the government's possession, custody, or control"). However, in this case, none of the subpoenaed materials previously were produced by the United States Attorney's Office in connection with its discovery obligations, despite the fact that this case has been pending since February 19, 2014, approximately seven months.

---

[2] Nor has the government articulated why any of the grounds relied upon in *Raineri* are present in this case.

**C.     Unsealing the Subpoenas Will Intrude Upon Mr. Villalobos'
Constitutional and Statutory Rights and Require a Hearing to
DetermineWhether Government Counsel Must Be Recused Because She
Has Been Exposed to Defense Strategy.**

The Pasadena City Attorney's Office disclosure of the subpoena to the
prosecution in this case violated Mr. Villalobos' Sixth Amendment rights.  Specifically,
Mr. Villalobos has a Sixth Amendment right not to disclose his defense or trial strategy
to the government.  *See United States v. Danielson*, 325 F.3d 1054, 1066 (9th Cir.
2003).  In addition, materials prepared by an attorney on behalf of his client in
anticipation of litigation, including those prepared during, and in furtherance of, the
case's investigation, constitute attorney work-product that is privileged from disclosure.
*United States v. Nobles*, 422 U.S. 225, 238-240 (1975).  The Federal Rules of Criminal
Procedure also recognize that such information is not subject to disclosure.  Fed. R.
Crim. P. 16(b)(2)(A).  The Rules similarly exempt from disclosure statements made to
the defendant, or the defendant's attorney, by current or prospective witnesses.  Fed. R.
Crim. P. 16(b)(2)(B).  Against this backdrop, the Ninth Circuit has frequently approved
of the filing of *in camera* proffers where the defense has no obligation to disclose the
information in the proffer.  *Gurolla*, 333 F.3d at 952 (approving of *in camera*
submission regarding testimony and entrapment defense in order to balance rights
under the Fifth and Sixth Amendments).

The subpoenas, and the documents sought in response to the subpoenas, were
clearly in furtherance of Mr. Villalobos' trial strategy and constituted privileged
attorney work-product.  In recognition of Mr. Villalobos' Sixth Amendment right not to
divulge his defense strategy, as well as his privilege against disclosure, the Court
ordered that the Order issuing the subpoena, the subpoena itself, and the documents
returned pursuant to the subpoena were not to be disclosed to the United States
Attorney's Office, or to other law enforcement agencies, except as necessary to comply
with the subpoena.

8

The government has already learned of the existence of the subpoena through the actions of the Pasadena City Attorney's Office.  The government attempts to compound that error by moving to unseal all subpoenas.  As noted above, this proposed remedy is not only legally improper, but it would cause more issues than it would solve.

In *United States v. Danielson*, the Ninth Circuit considered how courts should determine whether the Sixth Amendment is violated when the prosecution team obtains privileged information about the defendant's trial strategy.  325 F.3d at 1059.  The case involved an individual, Wayne Sava, who was cooperating with the government in its prosecution of Danielson.  Sava met with the defendant on a number of occasions and learned privileged trial strategy information from the defendant, which Sava then communicated to members of the prosecution team.  *Id.* at 1060-1064.  Though the prosecutor instructed Sava not to solicit trial strategy, and there was no indication that the prosecutor was ever made aware of the defendant's trial strategy, the law enforcement agents assigned to the prosecution team were exposed to privileged information.  *Id.* at 1073.  Importantly, it was unclear whether, consistent with the Sixth Amendment, "the prosecution team had not conducted its pre-trial investigation, introduced evidence at trial, or tailored its strategy and questions based on advanced knowledge of [the defendant's] trial strategy."  *Id.* at 1069.

*Danielson* explained that determining whether a Sixth Amendment violation of a defendant's right not to divulge trial strategy has occurred involves a two-step inquiry.  Adopting, with slight modification, the First Circuit's approach in *United States v. Mastroianni*, 749 F.2d 900, 908 (1st Cir. 1984), *Danielson* held that first the defendant must make a prima facie showing that the government has acted affirmatively to intrude into the attorney-client relationship and thereby obtain privileged information.  *Danielson*, 325 F.3d at 1071.  Second, "'the burden shifts to the government to show that there has been no prejudice to the defendant as a result of these communications.'"  *Id.* (quoting *Mastroianni*, 749 F.3d at 908) (internal alterations omitted).  At this second stage, the government "must show that all of the evidence it [plans to] introduce at trial

9

was derived from independent sources, and that all of its pre-trial and trial strategy [is] based on independent sources." *Id.* at 1074. "Strategy in this context is a broad term that includes, but is not limited to, such things as decisions about the scope and nature of the investigation, about what witnesses to call (and in what order), about what questions to ask (and in what order), about what lines of defense to anticipate in presenting the case in chief, and about what to save for possible rebuttal." *Id.*

Here, the government has acted affirmatively to obtain privileged work-product information. There are at least two categories of privileged work-product at issue. First, there is the *decision* to seek the subpoena itself—a decision that reflects counsel's knowledge that such documents existed and counsel's strategy to obtain such documents about the confidential informant in this case. *See Shelton v. Am. Motors Corp.*, 805 F.2d 1323, 1327-1329 (8th Cir. 1986) (holding defense counsel's awareness of the existence of certain documents was work product because her "selective review" of documents in anticipation of litigation "was based upon her professional judgment of the issues and defenses involved in this case"); *Sporck v. Peil*, 759 F.2d 312, 316 (3d Cir. 1985) ("Opinion work product includes such items as an attorney's legal strategy, his intended lines of proof, his evaluation of the strengths and weaknesses of his case, and the inferences he draws from interviews of witnesses."). Second, there is the specific information Mr. Villalobos' defense team sought in the subpoena, *i.e.,* the categories of information defense counsel listed in the subpoena. *Sporck*, 759 F.2d at 316 (holding that the defendant's counsel's "selecting and ordering a few documents out of thousands . . . could not help but reveal important aspects of his understanding of the case," such that counsel's selection of documents constituted "highly-protected" opinion work product).

If the Court is inclined to unseal the subpoenas, then it must hold an evidentiary hearing, at which "the government must present evidence, and must show by a preponderance of that evidence, that all of the evidence it proposes to use, and all of its trial strategy, were derived from legitimate independent sources." *Danielson*, 325 F.3d

10

1  at 1072.  In the absence of such an evidentiary showing by the government, Mr.

2  Villalobos will suffer prejudice, and will be left without a remedy for the government's

3  clear violation of his Sixth Amendment rights.  *Id.*

4

5                                    **III.**

6                                **CONCLUSION**

7          For the foregoing reasons, this Court should deny the government's motion in its

8  entirety.

9

10                              Respectfully submitted,

11                              SEAN K. KENNEDY
                                Federal Public Defender
12

13

14  DATED:  September 15, 2014     By  */s/ Christopher W. Dybwad*

15                              CHRISTOPHER W. DYBWAD
                                Deputy Federal Public Defender
16                              Attorney for DANIEL VILLALOBOS

17

18

19

20

21

22

23

24

25

26

27

28

                                    11